# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE L. COSTA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No. ED CV 10-0655 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION AND SUMMARY

On May 3, 2010, plaintiff Jacqueline L. Costa ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB"). [Docket No. 1.]

On November 30, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 12, 13, 14, 15.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, there is

substantial evidence in the record, taken as a whole, to support the decision of the Administrative Law Judge ("ALJ"). Thus, the Court affirms the Commissioner's decision denying benefits.

## II.
## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 47 years old on the date of her most recent administrative hearing, has completed high school, certification as a workers' compensation specialist, and medical assistant and phlebotomy training. (*See* Administrative Record ("AR") at 77, 599, 608, 617.)

On July 9, 2003 and September 23, 2004, Plaintiff filed for DIB, alleging that she has been disabled since October 20, 2000 due to bilateral carpal tunnel syndrome, irritable bowel syndrome, fibromyalgia, epicondylitis, tendonitis, glucose intolerance, pain, depression, and insomnia. (*See* AR at 42, 43, 44, 45, 46, 58, 65, 74, 77, 81-82.)

On October 10, 2007, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (*See* AR at 608-28.) The ALJ also heard testimony from Sandra Fioretti, a vocational expert ("VE"). (*Id.*)

On October 26, 2007, the ALJ denied Plaintiff's request for benefits. (AR at 12-22.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (*Id.* at 14.)

At step two, the ALJ found that Plaintiff suffers from severe impairments consisting of "status post bilateral carpal tunnel releases, cervical disc syndrome with radiculopathy, mood disorder [not otherwise specified], mixed personality traits, primarily histrionic features." (AR at 14 (emphasis omitted).)

At step three, the ALJ determined that the evidence did not demonstrate that Plaintiff's impairments, either individually or in combination, meet or medically

equaled the severity of any listing set forth in the Social Security regulations.[1/] (AR at 14.)

The ALJ then assessed Plaintiff's residual functional capacity[2/] ("RFC") and determined that she can perform light work. (AR at 15.) Specifically, the ALJ found Plaintiff can perform "occasional postural restrictions, no working around ladders, ropes or scaffolding, occasional gross manipulation bilaterally and moderate restrictions in activities of daily living, social functioning and in concentration, persistence and pace. Those restrictions mean [Plaintiff] can function and interact appropriately with the public, supervisors and co-workers." (*Id.* (emphasis omitted).)

The ALJ found, at step four, that Plaintiff has the ability to perform her past relevant work as a legal secretary. (AR at 21.) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 12, 22.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 4-6, 7.) The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by

---

[1/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Two disputed issues are presented for decision here:

1. whether the ALJ properly evaluated the medical evidence, (*see* Joint Stip. at 4-8); and

2. whether the ALJ properly assessed Plaintiff's credibility. (*Id.* at 14-17.)

The Court addresses each argument in turn.

## V.

**DISCUSSION AND ANALYSIS**

A.  Evaluation of the Medical Evidence

Plaintiff argues that "[w]hile the ALJ mentions in his decision much of the medical evidence of record, he has failed to mention that each and every one of Plaintiff's treating physicians have repeatedly found Plaintiff incapable of returning to her past work as a legal secretary due to her physical impairments, symptoms, and limitations." (Joint Stip. at 4.) Plaintiff contends that the "ALJ has done nothing in his unfavorable decision to reconcile his inconsistent opinion with all of the treating and consulting physicians." (*Id.*)

In particular, Plaintiff points to the opinions of three physicians who treated and/or examined Plaintiff for her mental impairments, psychiatrist Donald Feldman, M.D. ("Dr. Feldman"), psychiatrist Divy J. Kikani, M.D. ("Dr. Kikani"), psychologist William H. Soltz, Ph.D. ("Dr. Soltz"), and two physicians who treated Plaintiff for her physical impairments, orthopedic surgeon Brent W. Miller, M.D. ("Dr. Miller") and pain specialist Ben Shwachman, M.D. ("Dr. Shwachman"). (Joint Stip. at 4-7.)

1.  The ALJ Must Provide Specific and Legitimate Reasons Supported by Substantial Evidence to Reject a Treating Physician's Opinion

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."

5

*Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2) & 416.927(d)(1)-(2). If the opinion of an examining physician is rejected in favor of the opinion of a nonexamining physician, the ALJ may do so only by providing specific and legitimate reasons. *Lester*, 81 F.3d at 830-31. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

2. <u>The ALJ Properly Evaluated the Medical Evidence</u>

The Court is persuaded that the ALJ properly evaluated the medical evidence and his opinion is supported by substantial evidence. This Court's decision is grounded on three reasons.

First, a treating physician's *non-medical* opinion on whether the claimant is disabled "is not entitled to special significance." *Boardman v. Astrue*, 286 Fed.Appx. 397, 399 (9th Cir. 2008) (unpublished *memorandum* opinion) ("The ALJ is correct that a determination of a claimant's ultimate disability is reserved to the Commissioner, and that a physician's opinion on the matter is not entitled to special significance."). In other words, Drs. Feldman, Kikani, Soltz, Miller and Shwachman's non-medical opinions that Plaintiff is unable to work is not binding on the Commissioner. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."); 20 C.F.R. §§ 404.1527(e)(1) ("We are

responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.") & 416.927(e)(1) (same).

Indeed, under the regulations, these opinions arguably do not constitute a valid medical opinion. *See* 20 C.F.R. §§ 404.1527(e) ("Opinions on some issues, such as [that you are 'unable to work'], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability.") (italics in original) & 416.927(e) (same). Therefore, the ALJ was not required to explicitly detail its reasons for rejecting the opinions. *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (Because "opinions by medical experts regarding the ultimate question of disability are not binding[,] . . . [the Commissioner] was not obliged to explicitly detail his reasons for rejecting the [treating physician's] opinion.").

Second, Plaintiff fails to mention that Drs. Feldman, Kikani, Soltz, Miller and Shwachman treated Plaintiff in connection with work-related injuries. However, findings made in a workers' compensation case are not conclusive in a Social Security case. *See Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996) (citing *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Desrosiers*, 846 F.2d at 576 ("The categories of work under the Social Security disability scheme are measured quite differently"). While these physicians may have found Plaintiff disabled in a workers' compensation context, a finding that Plaintiff was temporarily disabled, or permanently disabled for that matter, for workers' compensation purposes, is not conclusive here. (*See, e.g.,* AR at 572); *see Macri*, 93 F.3d at 543-44; *Olivera v. Astrue*, 2010 WL 5582902, at *16 (S.D. Cal. 2010) ("A finding that Plaintiff was temporarily, partially psychiatrically disabled for workers' compensation purposes, is not conclusive here.").

Third, Plaintiff fails to point to any portions of Drs. Feldman, Kikani, Soltz, Miller and Shwachman's *medical* opinions that describe greater *functional* limitations than the RFC assessed by the ALJ which were not properly considered and/or improperly rejected. (*See generally* Joint Stip. at 4-8.) Plaintiff only contends that "each and every one of Plaintiff's treating physicians have repeatedly found Plaintiff incapable of returning to her past work as a legal secretary." (*Id.* at 4.)

Thus, the Court finds that the ALJ's evaluation of the medical evidence is free of legal error and is supported by substantial evidence. (*See, e.g.,* AR at 273-307 (Dr. Feldman's clinical psychiatric evaluation dated February 22, 2005 finding that Plaintiff "is oriented to time, place, and person," "[i]ntellectual functioning shows a normal general fund of knowledge" and "[d]ress and grooming are satisfactory"), 568 (Dr. Shwachman's treatment note dated March 29, 2006 indicating that Plaintiff "apparently has full range of motion of both upper extremities"); *see also infra* at § B.2.)

B. <u>Plaintiff's Credibility</u>

Plaintiff argues that "[w]hile the ALJ identifies a number of reasons that purport to diminish Plaintiff's credibility, none of these reasons form either a significant or a legitimate basis for rejecting any of Plaintiff's subjective statements of record." (Joint Stip. at 14-15.) Plaintiff contends that the ALJ "has unfortunately taken her subjective statements out of context" and "[n]one of this Plaintiff's physicians have stated anywhere . . . that she is malingering[, only] that this case is confusing and difficult from a medical stand point." (*Id.*)

1. <u>The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility</u>

An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the

8

following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, arguably, the ALJ did not find evidence of malingering. (*See generally* AR at 12-22.) Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040.

### 2. The ALJ Properly Rejected Plaintiff's Subjective Complaints

The Court is persuaded that the ALJ provided clear and convincing reasons for rejecting Plaintiff's credibility. Four reasons guide this determination.

First, the ALJ found that the objective medical evidence does not support Plaintiff's alleged degree of disability. (AR at 21.) Plaintiff's treating physicians were unable to find any objective evidence to support her extreme complaints of pain. (AR at 227 (Dr. Miller noting that Plaintiff's "perceived pain is totally inappropriate for her injuries"), 372 (orthopedic treatment note reporting that despite Plaintiff's complaints of right upper extremity pain, physician indicated "[o]ther than some findings of, what appears at this stage to be, fairly mild ulnar neuritis, and the patient's subjective complaints of elbow, neck and shoulder pain, I am unable to find any focal source of this"), 568 (Dr. Shwachman's treatment note dated March 29, 2006 indicating that Plaintiff "apparently has full range of motion of both upper extremities but apparently complains of pain on movement" and "pain is largely in her elbows she states").) A lack of objective evidence supporting Plaintiff's symptoms cannot be the sole reason for rejecting Plaintiff's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). However, it can be one of several factors used in evaluating the credibility of Plaintiff's subjective complaints. *Id.*

Second, the ALJ properly discounted Plaintiff's complaints regarding the

9

severity of her pain as inconsistent with a conservative treatment plan. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered, as part of credibility evaluation, treating physician's failure to prescribe, and claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and the "minimal, conservative treatment") (citation omitted); *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). Dr. Soltz repeatedly noted that treating orthopedic surgeon Ralph N. Steiger, M.D. ("Dr. Steiger") "treated [her] conservatively." (AR at 390; *see also id.* at 222, 392, 414.) With respect to Plaintiff's mental impairments, Dr. Soltz reported that "[i]t is interesting to note that her medications are fairly minimal on a psychiatric basis or at least she does not require any heavy anti-depressants or anti-psychotics." (*Id.* at 412.) At one point, Plaintiff even professed her own desire to be treated without pain medication. (*See id.* at 466 (Dr. Soltz's treatment notes dated March 16, 2006 stating that Plaintiff "told me if she is sent to pain management, she will refuse to take any medication" and "wants a pain management approach that is non-medicated").)

Third, the ALJ properly discounted Plaintiff's subjective complaints as inconsistent with her conduct. (AR at 21 (ALJ finding that Plaintiff is not credible due to her "wide range of activities of daily living")); *see Thomas*, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). Substantial evidence supports the ALJ's finding. For instance, throughout the record, Plaintiff's medical providers noted that she is able to drive, attend football games and takes vacations (such as a cruise, a trip to Las Vegas, the "mountains," and Martha's Vineyard) and even reported on occasion that she is "relatively asymptomatic" while

engaging in such activities.[3/] (*See* AR at 401, 417, 471, 478, 493, 496, 501, 506.)

Fourth, the ALJ rejected Plaintiff's statements based on her "problematic presentation to her mental health providers." (AR at 21.) This is a clear and convincing reason. *See Tonapetyan*, 242 F.3d at 1148 (ALJ properly discredited Plaintiff's subjective complaints based on her tendency to exaggerate her symptoms). A review of the record demonstrates that Plaintiff's physicians repeatedly found that she exaggerated her symptoms. (*See, e.g.*, AR at 230, 236, 291, 417, 423, 439, 450.)

Thus, the ALJ provided legally sufficient reasons supported by substantial evidence for discounting Plaintiff's subjective complaints of pain.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: April 22, 2011 _____
                                                                      Hon. Jay C. Gandhi
                                                                      United States Magistrate Judge

---

[3/] While Plaintiff testified at the hearing that she "always had to leave early" from football games because she "was either in too much pain or was falling asleep," (AR at 623-24), this Court will not second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.